UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
**STATE NATIONAL BANK of BIG**              )
**SPRING** *et al.*,                        )
                                            )
       **Plaintiffs,**  )
                                            )
       v.              )   Civil Action No. 12-1032 (ESH)
                                            )
**JACOB J. LEW** *et al.*,                  )
                                            )
       **Defendants.**  )
_____)

## MEMORANDUM OPINION

Plaintiffs filed this suit in 2012 to challenge the constitutionality of the Consumer Financial Protection Bureau ("CFPB"), which was created as part of the Dodd-Frank Act. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010). They also allege that the recess appointment of CFPB Director Richard Cordray was unconstitutional and seek an injunction that would prevent him from taking any further action in that role. After this Court dismissed the lawsuit on standing and ripeness grounds, *State Nat. Bank of Big Spring v. Lew*, 958 F. Supp. 2d 127, 166 (D.D.C. 2013), the Court of Appeals reversed in part. *See State Nat. Bank of Big Spring v. Lew*, 795 F.3d 48, 57 (D.C. Cir. 2015). It held that State National Bank of Big Spring ("SNB") had standing to challenge (1) the constitutionality of the CFPB's structure, and (2) Director Cordray's recess appointment. *See id.* at 54. Upon remand, the parties filed cross-motions for summary judgment. (*See* Pls.' Mot. for Summ. J. [ECF No. 53-1]; Defs.' Cross-Mot. for Summ. J. [ECF No. 59-1].)

At this time, the Court will defer ruling on plaintiffs' attack on the CFPB on separation-of-powers grounds. This same constitutional challenge was made to the D.C. Circuit in a

1

recently argued case. *See* Pet'rs' Statement of Issues, *PHH Corp. v. Consumer Fin. Prot. Bureau*, Case No. 15-1177 (D.C. Cir. July 24, 2015) (raising the question of "[w]hether the unprecedented structural features of the CFPB, which combine legislative, executive, and judicial power in the hands of a single individual, violate the separation of powers"). Plaintiffs in this case filed an amicus brief in support of petitioners, making largely the same arguments that they make here. *See generally* Br. of State National Bank of Big Spring, The 60 Plus Association, Inc.; and Competitive Enterprise Institute, *PHH Corp. v. Consumer Fin. Prot. Bureau*, Case No. 15-1177 (D.C. Cir. Oct. 5, 2015). Given the likelihood that this issue will soon be decided by the Circuit, this Court will hold this matter in abeyance until the Court of Appeals rules in *PHH Corp*. *See, e.g.*, *Al Qosi v. Bush*, 2004 WL 4797470, at *1 (D.D.C. Dec. 17, 2004) (holding further proceedings in abeyance pending resolution of the same issues in a case already before the D.C. Circuit).

It will, however, address the merits of plaintiffs' challenge to the recess appointment of Director Cordray. To do this, it will limit its background discussion to information that is relevant only to that issue.

**BACKGROUND**

On July 18, 2011, President Obama first nominated Richard Cordray to serve as CFPB Director. (*See* Defs.' Resp. to Pls.' Statement of Material Facts Not in Dispute ("Defs.' Resp.") [ECF No. 59-2] ¶ 18.) When the Senate took no action on that nomination, the President then appointed him to the position on January 4, 2012, invoking his authority under the Recess Appointments Clause. (*See id.* ¶ 19.) That same day, the President also invoked his Recess Appointment authority to appoint three members to the National Labor Relations Board ("NLRB"). (*See id.* ¶ 21.) The Supreme Court subsequently found in *National Labor Relations*

*Board v. Noel Canning*, 134 S. Ct. 2550, 2578 (2014), that these NLRB appointments were made in violation of the Recess Appointments Clause.

As a recess appointee, Cordray exercised final decision-making authority concerning several CFPB rulemakings.  (*See* Defs.' Resp. ¶ 27; Electronic Fund Transfers (Regulation E), 77 Fed. Reg. 6,193 (Feb. 7, 2012); 77 Fed. Reg. 50,243 (Aug. 20, 2012); 78 Fed. Reg. 30,661 (May 22, 2013); Integrated Mortgage Disclosures Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth In Lending Act (Regulation Z), 77 Fed. Reg. 51,115 (Aug. 23, 2012);[1] Escrow Requirements Under the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 4,725 (Jan. 22, 2013); Ability to Repay and Qualified Mortgage Standards Under the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 6,407 (Jan. 30, 2013); Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10,695 (Feb. 14, 2013).

On January 24, 2013, President Obama re-nominated Cordray to serve as CFPB Director, and the Senate confirmed his nomination on July 16, 2013.  (Defs.' Resp. ¶ 26.)  The following month, Director Cordray published a Notice of Ratification in the Federal Register, which read as follows:

> The President appointed me as Director of the Bureau of Consumer Financial Protection on January 4, 2012, pursuant to his authority under the Recess Appointments Clause, U.S. Const. art. II, § 2, cl. 3.  The President subsequently appointed me as Director on July 17, 2013, following confirmation by the Senate, pursuant to the Appointments Clause, U.S. Const. art. II, § 2, cl. 2.  I believe that the actions I took during the period I was serving as a recess appointee were legally authorized and entirely proper.  To avoid any possible uncertainty, however, I hereby affirm and ratify any and all actions I took during that period.

Notice of Ratification, 78 Fed. Reg. 53,734, 53,734 (Aug. 30, 2013).

---

[1] Although this Notice of Proposed Rulemaking was issued during Director Cordray's recess appointment, the final rule was not issued until after his Senate confirmation and re-appointment. *See* 78 Fed. Reg. 79,730 (Dec. 31, 2013).

The primary point of contention between the parties is what legal effect, if any, this purported ratification has.

## ANALYSIS

### I. RECESS APPOINTMENT

After finding that plaintiffs had standing to challenge Director Cordray's recess appointment as unconstitutional, the Court of Appeals left it to this Court "to consider the significance of Director Cordray's later Senate confirmation and his subsequent ratification of the actions he had taken while serving under a recess appointment." *State Nat. Bank of Big Spring*, 795 F.3d at 54. Defendants now argue that the confirmation and subsequent ratification is fatal to plaintiffs' recess appointment challenge for three reasons.

#### A. Mootness

At the time the Second Amended Complaint was filed, Director Cordray had not yet been confirmed by the Senate, and thus, plaintiffs challenged his authority to take any action as head of the Bureau. (*See* Second Am. Compl. [ECF No. 24] ¶ 257 (filed Feb. 19, 2013).) They now acknowledge that his subsequent confirmation moots much of their claim for injunctive relief: "To be sure, plaintiffs do not dispute that subsequent to his confirmation, Cordray could (subject to plaintiffs' separation of powers challenge) properly exercise those authorities that are lawfully vested in him as Director of the CFPB." (*See* Pls.' Reply Br. [ECF No. 62] at 33.) However, they argue that even if they are not entitled to all of the relief they initially requested, the dispute remains live because the Court can still enjoin the enforcement of regulations that were promulgated prior to his confirmation. (*See id.*; *see also* Pls.' Mot. for Summ. J. at 6 (identifying the five regulations issued prior to confirmation "that most directly impact SNB").) Defendants respond that this reframing of the requested relief amounts to a constructive amendment of

plaintiffs' complaint and should thus be disallowed.  (*See* Defs.' Cross-Mot. for Summ. J. at 33-34.)

Even if certain remedies have been foreclosed during the course of litigation, the availability of partial relief prevents the case from becoming moot.  *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992).  Therefore, defendants' mootness argument can only succeed if none of the relief sought remains available in the wake of Director Cordray's confirmation.  *See id.*  As discussed, plaintiffs initially sought to enjoin Cordray from "carrying out any of the powers" of his office (Second Am. Compl. ¶ 257), and they continue to seek an injunction against the enforcement of rules promulgated prior to his confirmation.  The Court agrees with plaintiffs that the broad request for relief in their complaint encompasses the more limited relief that could still be granted, *i.e.*, enjoining Director Cordray from carrying out *some* of the powers of his office.  (*See* Pls.' Reply Br. at 32.)  Defendants' argument that "[t]here is no overlap between the injunction originally requested and SNB's present characterization of it" (Defs.' Reply Br. [ECF No. 64] at 20) is not persuasive.  For the same reason, there is no support for defendants' argument that the reframed request for relief is not properly before the Court.  (*See id.* at 20-21.)  As discussed, the limited relief still potentially available to plaintiffs was sought in their Second Amended Complaint.

### B.  Standing

Defendants next argue that plaintiffs have not demonstrated standing to challenge most of the regulations they seek to invalidate.  (*See* Defs.' Cross-Mot. for Summ. J. at 35-40.)  This both misapprehends the thrust of plaintiffs' claim and flies in the face of the Court of Appeals' decision.  First, plaintiffs are not seeking to directly "invalidate" any regulations, as if this were a run-of-the-mill APA challenge.  (*See* Pls.' Reply Br. at 34-35.)  Instead, they are seeking a

declaration that Director Cordray's recess appointment was unconstitutional, and consequently, an injunction preventing the enforcement of any rules that were issued while he was a recess appointee.  (*See id.*; *see also* Second Am. Compl. ¶ 257.)  Defendants essentially admit that plaintiffs' compliance costs under the Remittance Rule create standing to challenge the recess appointment (*see* Defs.' Cross-Mot. for Summ. J. at 35), as they must following the decision of the Court of Appeals.  *See State Nat. Bank of Big Spring*, 795 F.3d at 53-54 (SNB's Remittance Rule compliance costs create standing to challenge both the Bureau's constitutionality and Director Cordray's recess appointment).  Thus, the Court must reach the merits of the recess appointment claim, regardless of whether SNB would have also been able to establish standing under other rules.  Second, and more fundamentally, the Court of Appeals has already unequivocally held as much: "[T]he Bank has standing to challenge Director Cordray's recess appointment."  *See id.* at 54.  It thus remanded to this Court "for consideration *of the merits* of this issue," including the significance of Cordray's ratification of the acts taken during the allegedly unlawful recess appointment.  *See id.* (emphasis added).

Accordingly, the Court will now turn to the merits of this issue.[2]

**C. Ratification**

On August 30, 2013, just over a month after his Senate confirmation, Director Cordray published a notice in the Federal Register "affirm[ing] and ratify[ing] any and all actions" that he took between his recess appointment and subsequent confirmation.  *See* Notice of Ratification,

---

[2] Defendants also challenge the standing of Competitive Enterprise Institute and the 60 Plus Association to remain in the case (Defs.' Cross-Mot. for Summ. J. at 49-50), but because SNB has standing, the Court need not consider whether the other plaintiffs also have standing to make the same claims.  *See Ry. Labor Execs.' Ass'n v. United States*, 987 F.2d 806, 810 (D.C. Cir. 1993) ("[T]he Supreme Court has repeatedly held that if one party has standing in an action, a court need not reach the issue of the standing of other parties when it makes no difference to the merits of the case.").

78 Fed. Reg. 53,734, 53,734 (Aug. 30, 2013). Defendants thus argue that even if the recess appointment was unconstitutional,[3] this ratification cured any defect in the rules promulgated during the interim period. (*See* Defs.' Cross-Mot. for Summ. J. at 41-46.) They rely primarily upon two D.C. Circuit cases in which properly appointed officers effectively ratified the actions of their predecessors, when the validity of the predecessors' appointments was doubtful. *See Doolin Sec. Sav. Bank, F.S.B. v. Office of Thrift Supervision*, 139 F.3d 203 (D.C. Cir. 1998); *Fed. Election Comm'n v. Legi-Tech, Inc.*, 75 F.3d 704 (D.C. Cir. 1996); *see also Laurel Baye Healthcare of Lake Lanier, Inc. v. Nat'l Labor Relations Bd.*, 564 F.3d 469, 476 (D.C. Cir. 2009) (relying on *Legi-Tech* to suggest that a properly reconstituted NLRB could ratify and reinstate an order invalidated due to Board's lack of quorum). Defendants have also filed a notice of recent opinions from the Third and Ninth Circuits approving ratification, the latter of which found Director Cordray's ratification of his past actions to be effective. *See Advanced Disposal Servs. E., Inc. v. Nat'l Labor Relations Bd.*, 820 F.3d 592, 605-06 (3d Cir. 2016); *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1192 (9th Cir. 2016) ("Cordray's August 2013 ratification, done after he was properly appointed as Director, resolves any Appointments Clause deficiencies."). A review of these cases demonstrates why Director Cordray's ratification saves the regulations from plaintiffs' challenge.

In *Legi-Tech*, the Federal Election Commission brought an enforcement action against appellee, but while that litigation was pending, the D.C. Circuit ruled in a separate case that the FEC's makeup was unconstitutional. *See* 75 F.3d at 706. The FEC then properly reconstituted

---

[3] Defendants make no attempt to rebut the argument that Cordray's recess appointment was unconstitutional (*see* Defs.' Cross-Mot. for Summ. J. at 31-32, 41), which is unsurprising in light of the Supreme Court's decision in *Noel Canning*. *See* 134 S. Ct. at 2578 (holding that three recess appointments made on the same day as that of Director Cordray were unconstitutional).

7

itself and voted to continue with the enforcement action against Legi-Tech. *See id.* Nonetheless, the district court dismissed the case, holding that the ratification was ineffective and that to move forward, the FEC would have to initiate an entirely new proceeding. *See id.* The D.C. Circuit reversed, holding that (1) the FEC's improper makeup did not, in and of itself, render its actions void;[4] (2) even if it was nothing more than a "rubberstamp," the ratification adequately remedied any prejudice to Legi-Tech; and (3) forcing the FEC to start the administrative process over would be fruitless, because "it is virtually inconceivable that its decisions would differ in any way the second time from that which occurred the first time." *See id.* at 708-09. It is this last point that bears particular attention—just as there was "no significant change in the membership" of the properly reconstituted FEC, *id.* at 709, Director Cordray in effect replaced himself and then ratified his own prior actions. Thus, there is even less reason here to believe that forcing him to restart the notice-and-comment process—or even to go through the motions of a nominal "reconsideration"—would change the outcome in any way.

The D.C. Circuit reaffirmed *Legi-Tech*'s holding and rationale just two years later in *Doolin*. *See* 139 F.3d at 214. There, an agency's Acting Director issued a Notice of Charges against a bank, after which the Acting Director's successor found the charges warranted and entered a final cease and desist order. *See* 139 F.3d at 204. On appeal, the bank challenged the validity of the Acting Director's appointment, arguing that he lacked authority to issue the

---

[4] Plaintiffs mistakenly cite *Legi-Tech* for the proposition that every action taken by Director Cordray pre-confirmation is "void *ab initio*." (*See* Pls.' Reply Br. at 39 (quoting *Legi-Tech*, 75 F.3d at 707).) However, that quote was taken from the Court of Appeals' summary of Legi-Tech's own arguments, *which the Court then expressly rejected*. *See Legi-Tech*, 75 F.3d at 707 ("Legi-Tech argues that . . . [s]eparation of powers is a structural constitutional defect that makes the FEC's entire investigation and decision to file suit void *ab initio*."); *id.* at 708 ("Legi-Tech's contention that . . . separation of powers is a 'structural' constitutional defect that necessarily voids all prior decisions is overstated.").

Notice of Charges, and therefore the subsequent cease and desist order issued by his successor was also invalid. *See id.* at 211-12. Relying on *Legi-Tech*, the Court of Appeals held otherwise—because the Acting Director's successor was properly appointed, and because his cease and desist order implicitly ratified the earlier Notice of Charges, the agency's order was upheld. *See id.* at 213-14. ("[R]edoing the administrative proceedings would bring about the same outcome—a cease and desist order against the Bank. To require another Director sign a new notice . . . would do nothing but give the Bank the benefit of delay . . . ."). The Court thus had no need to determine whether the Acting Director's appointment was invalid, because even if it were, his successor's ratification cured any potential defect. *See id.* at 214.

The more recent D.C. Circuit decisions cited by plaintiffs do nothing to negate this analysis. It is true that *Landry v. FDIC* stated that Appointments Clause violations create a structural error that, even absent a showing of prejudice, make the invalid appointee's actions "subject to automatic reversal." *See* 204 F.3d 1125, 1131 (D.C. Cir. 2000). However, *Landry* did not involve ratification, and it distinguished *Doolin* on that basis, expressly recognizing that ratification can "cure[] the [Appointments Clause] error." *See id.* at 1132. *SW General* similarly did not involve any attempt at ratification. *See SW Gen., Inc. v. Nat. Labor Relations Bd.*, 796 F.3d 67, 79 (D.C. Cir. 2015). And, *Intercollegiate Broadcasting System*, which plaintiffs cite for the same "automatic reversal" point, is even more detrimental to their position. *See Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 796 F.3d 111, 124 (D.C. Cir. 2015). There, the Court rejected an Appointments Clause challenge because a properly constituted panel of administrative judges later ratified the challenged decision. *See id.* ("[A] court's holding that there has been an Appointments Clause violation does not mean that the violation cannot be remedied by a new, proper appointment.").

Moreover, the recent Third and Ninth Circuit decisions upholding agency ratification further support defendants' position. In *Advanced Disposal Services East*, petitioner challenged the actions of an NLRB Regional Director who was appointed by an improperly constituted NLRB. *See* 820 F.3d at 596. Because the properly reconstituted NLRB had ratified the Regional Director's appointment, and because the Regional Director had then ratified the actions challenged by petitioner, the court upheld those actions. *See id.* at 604-06 (relying primarily upon *Doolin*, 139 F.3d at 213-14). The Ninth Circuit's decision in *Gordon* is even more helpful to defendants, as it deemed effective the very ratification challenged here: "Cordray's August 2013 ratification, done after he was properly appointed as Director, resolves any Appointments Clause deficiencies." *See* 819 F.3d at 1192 (citing *Legi-Tech*, 75 F.3d at 707, 709, for its holding that "a newly constituted FEC need not 'start at the beginning' and 'redo the statutorily required procedures in their entirety'").

Plaintiffs raise three arguments to dispute the effectiveness of Director Cordray's ratification, none of which is persuasive. First, they argue that ratification can only be effective if the ratifier was authorized to take the action both initially and at the time of ratification, and Cordray lacked that authority when the rules were initially promulgated. (*See* Pls.' Mot. for Summ. J. at 33-35.) This argument confuses the principal (the CFPB) and its agent (Cordray). If it were the *agent* who needed that authority at all times, then ratification could never cure an Appointments Clause violation—the very reason ratification is needed is that the appointee lacked authority to take the original action. *See, e.g.*, *Legi-Tech*, 75 F.3d at 709 (ratification was an "adequate remedy" where FEC initially acted without authority). Instead, it is the *principal*, the CFPB, who must at all times have the authority to take the challenged action. *See Gordon*, 819 F.3d at 1191 ("Under the Second Restatement, if the principal (here, CFPB) had authority to

…

bring the action in question, then the subsequent August 2013 ratification of the decision to bring the case against Gordon is sufficient."). Plaintiffs implicitly acknowledge that the CFPB, at all relevant times, has had the authority to promulgate the challenged regulations. (*See* Pls.' Mot. for Summ. J. at 34 (discussing "the CFPB's rulemaking authority" during Cordray's recess appointment); *see also* 12 U.S.C. § 5512 (establishing the CFPB's rulemaking authority).) Accordingly, this argument fails.

Second, plaintiffs assert that the ratification is ineffective because it did not involve "repromulgation of the regulations pursuant to the APA's notice and comment rulemaking procedures." (*See* Pls.' Reply Br. at 41-42.) In other words, they make the same argument that the Court of Appeals rejected in *Legi-Tech*, *Doolin*, and *Intercollegiate Broadcasting System*— that ratification can only be effective if it involves a repetition of the procedures initially followed. *See Legi-Tech*, 75 F.3d at 708 (rejecting argument that "the FEC must repeat the entire administrative process" in order for ratification to be effective); *Doolin*, 139 F.3d at 214 (agency not required to "redo[] the administrative proceedings" in order for ratification to be effective); *Intercollegiate Broad. Sys.*, 796 F.3d at 120 (ratification effective even though reconstituted Board did not conduct a new evidentiary hearing). Plaintiffs suggest that these cases are distinguishable because they do not involve a rulemaking (*see* Pls.' Reply Br. at 39), but nothing in them implies that the particular form of administrative action at issue is dispositive. *See Intercollegiate Broad. Sys.*, 796 F.3d at 119 (rejecting attempt to distinguish *Legi-Tech* and *Doolin* "on the ground that they involved administrative enforcement actions . . . rather than the exercise of judicial authority in an adversarial proceeding"). Instead, regardless of the type of administrative action, these decisions have consistently declined to impose formalistic procedural requirements before a ratification is deemed to be effective.

Nonetheless, plaintiffs insist that they remain prejudiced even after ratification, because they "never had an opportunity to present objections or comments to the proposed rules to a constitutionally appointed official." (*See* Pls.' Reply Br. at 44.) This argument rings hollow when considering that plaintiffs do not allege that (a) they offered comments when the rules were first proposed, (b) they refrained from offering comments because they believed Cordray's appointment unconstitutional, or (c) they would offer comments if the rules were again subjected to notice and comment. But even assuming they would avail themselves of the "opportunity" this time around, they do not specify what the substance of those comments would be, or most crucially, give any reason to believe that the outcome would change if they were permitted to comment. That is the only relevant prejudice: the likelihood that the outcome was affected by the Appointments Clause violation. *See, e.g.*, *Legi-Tech*, 75 F.3d at 708 ("Even were the Commission to return to square one . . . it is virtually inconceivable that its decisions would differ in any way the second time from that which occurred the first time."). It is not enough that plaintiffs lost some hypothetical opportunity to participate in the administrative process.

Finally, plaintiffs make the related argument that ratification was ineffective because Director Cordray failed to meaningfully reconsider the merits of the challenged rules through a *de novo* deliberative process. (*See* Pls.' Reply Br. at 40.) There is some support for this argument, particularly in *Doolin* and *Advanced Disposal Services East*, but the Court concludes that such a "*de novo* reconsideration" requirement is both unworkable and unwarranted, at least where, as here, the agency decision-maker is ratifying his own actions. Instead, D.C. Circuit's earlier opinion in *Legi-Tech* makes clear that "the better course is to take the [ratification] at face value and treat it as an adequate remedy," even though it may well be nothing more than a rubberstamp. *See* 75 F.3d at 709.

The reason for this is well-established: "it generally is not the function of the court to probe the mental processes of an agency decisionmaker." *See Hercules, Inc. v. Envtl. Prot. Agency*, 598 F.2d 91, 123 (D.C. Cir. 1978) (quoting *United States v. Morgan*, 313 U.S. 409, 422 (1941)) (internal quotations omitted); *see also Legi-Tech*, 75 F.3d at 709 ("[W]e cannot, as Legi–Tech argues, examine the internal deliberations of the Commission, at least absent a contention that one or more of the Commissioners were actually biased.").

This is especially true where Director Cordray is ratifying his own actions—the Court would effectively be forcing him to repeat his own analysis in a deliberation that is only nominally "*de novo*." *See Legi-Tech*, 75 F.3d at 709 (a new proceeding by a similar FEC panel, "given human nature, promises no more detached and 'pure' consideration of the merits of the case than the Commission's ratification decision reflected"). As discussed *supra*, an Appointments Clause violation creates prejudice where it likely affected a challenged decision, because a different, properly appointed decision-maker might have taken a different approach. *See id.* at 708-09 (assuming that the presence of non-voting FEC members "impacted the [challenged enforcement] action" against Legi-Tech). Therefore, where the very same decision-maker ratifies his own challenged decision, any chance of prejudice is effectively wiped out. *Cf. Andrade v. Regnery*, 824 F.2d 1253, 1257 (D.C. Cir. 1987) (no Appointments Clause injury where a properly appointed administrator implemented a policy developed by his improperly appointed predecessor). In each of the ratification cases decided by the Court of Appeals, the ratifier was not the same as the original decision-maker. *See Legi-Tech*, 75 F.3d at 706 (ratifying FEC panel excluded two non-voting *ex officio* members from the original panel); *Doolin*, 139 F.3d at 204 (new director ratified Notice of Charges issued by prior acting director); *Intercollegiate Broad. Sys.*, 796 F.3d at 118-19 (Copyright Royalty Board determination ratified

by a Board made up of entirely new members). Thus, even if those opinions could be stretched to impose a "*de novo* deliberation" requirement, this case is distinguishable for that reason alone. As discussed, however, *Legi-Tech* precludes such a reading, and a re-deliberation requirement would be inconsistent with the prohibition on courts probing agency decision-making processes.

## CONCLUSION

For the reasons stated above, the Court will grant in part defendants' cross-motion for summary judgment and deny in part plaintiffs' motion for summary judgment. It will hold in abeyance any ruling on plaintiffs' separation-of-powers challenge pending the Court of Appeals' ruling in *PHH Corp. v. Consumer Financial Protection Bureau*, Case No. 15-1177 (argued Apr. 12, 2016). A separate Order accompanies this Memorandum Opinion.

/s/ *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

DATE: July 12, 2016