UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
----------------------------X

STATE NATIONAL BANK OF
BIG SPRING, et. al,

                    Plaintiffs
          v.                    Civil Action No. 12-1032-ESH

TIMOTHY F. GEITHNER, et al.,

                    Defendants
----------------------------X

                              Washington, D.C
                         Tuesday, January 17, 2017
                                2:50 p.m.

           TRANSCRIPT OF MOTION HEARING
      BEFORE THE HONORABLE ELLEN SEGAL HUVELLE
           UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs: Adam R.F. Gustafson, Esq.
                    BOYDEN GRAY & ASSOCIATES
                    801 17th Street, NW, Suite 350
                    Washington, DC 20006
                    (202) 577-5681

For the Defendants: Matthew Joseph Berns, Esq.
                    U.S. DEPARTMENT OF JUSTICE
                    Civil Division
                    20 Massachusetts Avenue, NW
                    Washington, DC 20001
                    (202) 616-8016

Court Reporter:     Lisa Walker Griffith, RPR
                    U.S. District Courthouse
                    Room 6507
                    Washington, D.C.  20001
                    (202) 354-3247

**P R O C E E D I N G S**

1

2          THE DEPUTY CLERK:  This is Civil Action 12-1032.

3    State National Bank of Big Spring et.al versus Timothy

4    Geithner.

5          MR. GUSTAFSON:  Adam Gustafson from Boyden Gray

6    and Associates for all plaintiffs.

7          MR. BERNS:  Matthew Berns for the defendant.

8    Good afternoon, Your Honor.

9          THE COURT:  And with you?

10          MR. BERNS:  That's Justin Sanberg.

11          THE COURT:  Okay.  Good afternoon.

12          We're here today, it has now been turned into a

13    motion.  It was a letter originally and we have an

14    opposition, and the question of whether I should enter

15    judgment on the constitutional issue before me in this case

16    and try to certify it under 1292.

17          At the time, I should put on the record, in

18    October 19th, after the -- I'll call it the Cavanaugh

19    opinion -- was issued, finding that there was an

20    unconstitutional violation of separation of powers and his

21    remedy was to have the president have the capacity to get

22    rid of the director.

23          Then at the time we spoke on the 19th, it had not

24    been decided, at least as far as I knew, by the Consumer

25    Financial Protection Bureau, it had not been decided

whether they would seek en banc.  They have now filed in

November filed en banc.  From what I see from above

pleadings will be finished around the 27th of November.

There is some response available.  Then I am not really

quite sure how long it takes for them to decide.  It could

be a matter of days or a month.  I don't know.

So at the time when I contacted counsel on the

19th of October, we didn't know whether they would seek en

banc or not.  But my question to the plaintiffs at that

time is there anything this Court needs to do other than

wait out Judge Cavanaugh's opinion, whether the en banc was

granted or not, and if so, whether that opinion would

ultimately prevail.

I was told by the defendants at that time that

there were still issues and that I should stay the matter

pending the resolution at the Court of Appeals.  The issues

that I recall they raised were whether there was an

independent claim that would still confront me, even if

Judge Cavanaugh was upheld, independent claim about the

funding of the agency that was separate I think, basis for

arguing the separation powers had been violated, this time

between the legislative and the executive.  And I was told

remedy.

So I would like to hear from the defendants.

Other than they moved for en banc, so what?

1          I'm sorry, the plaintiffs.  I keep thinking of

2      you.  What I would like to hear from the plaintiffs.  What

3      has made you change your position since the time I called

4      up figuring my case was all over?

5          MR. GUSTAFSON:  I think that you pointed out the

6      key fact which is the government has sought the hearing en

7      banc in this matter.  And critically, Judge Henderson, in

8      her partial dissent from the panel decision, pointed out

9      that in her view this case should be resolved on APA

10     grounds and the constitutional question which is the basis

11     of Judge Cavanaugh's opinion should be avoided under the

12     constitutional avoidance doctrine.

13          We submit that if the Court does decide to rehear

14     the case en banc, it is likely that the Court will adopt

15     Judge Henderson's view on the matter and decide the case on

16     APA grounds.  What that would mean for this Court is that

17     it would be basically in the unenviable position of having

18     to redecide the core constitutional question that PHH

19     already resolved, but in the shadow of PHH.

20          In fact, the Court would be reviewing de novo a

21     non-binding panel opinion from the D.C. Circuit.

22          THE COURT:  What is so unenviable?  I've been

23     reversed before.  If they want to avoid the question on the

24     basis of constitutional avoidance, why do I want to force

25     them to do otherwise?  That's what you're saying.  In the

1  unlikely event that they grant en banc and when they

2  finally decide to go along with the statutory argument, not

3  the constitutional argument.

4          They have three choices if they grant en banc.

5  One they can say Judge Henderson's opinion is the way we

6  want to go.  Two, they can say we disagree with Judge

7  Cavanaugh, his opinion will be vacated, we find it

8  constitutional if they don't want to avoid the

9  constitutional issue or the third is we agree with Judge

10  Cavanaugh and it is unconstitutional.  Under any of those

11  three scenarios, let's assume, how is it that my part of

12  the case, given what you have told me before, is resolved?

13          MR. GUSTAFSON:  Under either of the last two

14  scenarios that you have outlined, that is a constitutional

15  holding going either way for the plaintiff or for the

16  bureau, under either of those circumstances, the scope of

17  the issues before this Court would be, if not eliminated,

18  at least substantially reduced.

19          It is true that there are additional issues in

20  our case that were not before the Court of Appeals in PHH.

21  But under some scenarios, the case could be resolved in its

22  entirety.  Our position is that the appropriate remedy for

23  the constitutional violation is not the remedy that Judge

24  Cavanaugh described in PHH.  But rather, it is outright

25  invalidation of the bureau itself.

1          THE COURT:  And that's the remedy that you would

2    seek that I would enter by judgment.

3          MR. GUSTAFSON:  No, we do not ask you to enter

4    that remedy here.  Our position here is that, in the

5    interest of judicial economy, this Court can simply issue

6    an order holding exactly what the D.C. Circuit held in PHH

7    on the basis of the panel decision in PHH.  That is holding

8    that the removal protection currently afforded to the

9    bureau is unconstitutional.

10          THE COURT:  You say in your letter which is now a

11    motion, that the appropriate remedy for their standalone

12    constitutional claim, the plaintiffs believe that the issue

13    of the appropriate remedy for their standalone

14    constitutional claim can be summarily resolved against

15    plaintiffs.

16          Doesn't that mean that you would be limited to

17    Cavanaugh's remedy and that I would decline to invalidate

18    Article 10?

19          MR. GUSTAFSON:  Yes, Your Honor.  That is, I'm

20    sorry I misunderstood you before.  Yes, we anticipate that

21    if you were to issue the order under 1292(b) that it would

22    include the same holding and the same remedy that Judge

23    Cavanaugh issued in PHH.  The holding of course would be in

24    our favor, but the remedy would not be in our favor because

25    we seek a broader remedy.

1          THE COURT:  Your way of thinking when we spoke

2    before and I was persuaded by it is this sort of slim

3    scenario, or no scenario successfully ends the case from

4    this point of view because you do not have a standalone

5    claim about appropriations?

6          MR. GUSTAFSON:  We do have an appropriations

7    argument.  We do have what opposing counsel has called the

8    kitchen sink theory, what we call the mosaic theory that

9    all of these features of the CFPB interact to create an

10   unconstitutional agency without regard to the

11   unconstitutionality of anyone piece of the recipe.

12          But our view is that those issues, the

13   appropriations issue, the mosaic theory, those can remain

14   under this Court's jurisdiction while an appeal on the

15   standalone removal issue goes up to the D.C. Circuit.

16          And what ever happens in the D.C. Circuit,

17   whether the PHH opinion is substantially upheld or reversed

18   on constitutional grounds, that will reduce the number of

19   issues for this Court.  And probably provide guidance on

20   how to assess the constitutionality of the bureau under

21   other theories.

22          THE COURT:  Only if they reach it.

23          MR. GUSTAFSON:  That's right.

24          THE COURT:  There is a way that they won't reach

25   it and I will, as you say, be in the unenviable position of

1  doing what in theory I am paid to do, decide.

2        MR. GUSTAFSON:  I don't mean that deciding is

3  unenviable.  Only that the duplication is unenviable.  I

4  think it's in the interest of judicial economy to have as

5  few courts deciding these pure legal questions as

6  necessary.  In this case, if after the Cavanaugh panel has

7  decided it, the en banc Court vacates that decision, then

8  it requires a new decision on the same question from this

9  Court which is likely to be reviewed by, at the very least

10 a panel of D.C. Circuit, if not the en banc court and the

11 Supreme Court.

12        THE COURT:  Right.  But then I would get to

13 address all of the issues, the remedy, the standalone

14 argument, the kitchen sink argument and the

15 constitutionality.  So that, this case would then go up

16 completely decided and the only way that would not happen

17 is if Judge Cavanaugh is upheld on constitutional grounds.

18 In which case, I won't be in an unenviable position because

19 I would have to follow that circuit precedent.  For

20 judicial economy, I'm not sure whose economy we're

21 promoting here.  Mine or the Court of Appeals.

22        MR. GUSTAFSON:  Both I would say, Your Honor.  I

23 think in your case you are right that there are issues that

24 remain that may have to be decided.  It is possible that

25 they will not have to be decided.  If for example, we were

1    to prevail on our view that the appropriate remedy in PHH

2    on removal alone is invalidation of the CFPB.

3         THE COURT:  How would that get up there now

4    unless I rule against you on that?  That's not before them,

5    is it?  Even though it was briefed and alluded to in

6    footnote 16.  They just said it was sort of frosting on the

7    case.  They didn't give it much traction.

8         MR. GUSTAFSON:  To clarify, I'm not talking about

9    the appropriations clause issue because I agree that, if

10   you were to do what we suggest, the appropriations clause

11   issue would remain in this court.  But our view is that,

12   even under the removal issue alone, ignoring

13   appropriations, the appropriate remedy is not taking a blue

14   pencil of the act and eliminating the removal protection.

15   Rather, our view is that the appropriate remedy is to

16   invalidate the agency.

17        THE COURT:  Are the folks who are on appeal on

18   your side of the fence arguing that?  I didn't think so.

19        MR. GUSTAFSON:  Well, if the Court were to

20   consolidate our case with PHH as we suggest, then the Court

21   would have before it the full range of remedial options.

22        THE COURT:  If it is consolidated.  But they

23   don't have to be consolidated.  There are a lot of 'if's

24   going on here, hypotheticals I would say.  First, you have

25   to have me enter a 1292, then you've got, it is

1    discretionary with the Court of Appeals, they may think it

2    all slows us down or makes it just what they don't want,

3    the constitutional issue.  Maybe they would like me to do

4    it first.

5            MR. GUSTAFSON:  You are right about the 'if's

6    built into this process.  It is entirely possible that you

7    would certify the question and the Court of Appeals would

8    determine for some reason that perhaps because it decides

9    not to rehear PHH en banc that it doesn't want to certify

10   the appeal and consolidate the case.  In that case, nothing

11   is lost.

12           THE COURT:  Except I have to send it up there.

13           MR. GUSTAFSON:  Well, in the grand scheme of

14   things that one page order is a relatively small matter I

15   would submit compared to the prospect of having to start

16   over on the question of whether the removal protection in

17   the Dodd-Frank Act is constitutional in the first place.

18           THE COURT:  When you told me on the phone and

19   somewhat persuaded me, why don't I sit tight and wait for

20   the Court of Appeals to give me guidance.  And it is only

21   one scenario, it is not unlikely I agree, but it's not

22   necessarily the only scenario, that with the exception of

23   one scenario I will get guidance for sure.

24           MR. GUSTAFSON:  The risk in sitting tight, which

25   is of course in your discretion, is that the Court of

1    Appeals which is now deciding whether to grant rehearing en

2    banc is currently making that decision based on Judge

3    Henderson's proposed resolution, the constitutional

4    avoidance.

5            THE COURT:  How do you know that?

6            MR. GUSTAFSON:  Because Judge Henderson is a

7    member of the Court and the Court has an independent duty

8    to consider whether the case is appropriate for it.

9            THE COURT:  Right.  But they don't have to go

10   that route if they don't want to.  Judge Cavanaugh didn't.

11           MR. GUSTAFSON:  Absolutely right.  We submit that

12   it is more likely that the Court will -- if our case is

13   there before the Court, if the Court has the option of

14   consolidating this case with PHH, the Court is less likely

15   to follow the constitutional avoidance route because Judge

16   Henderson herself recognized in her dissent that our case

17   would be before the D.C. Circuit very soon.

18           THE COURT:  She didn't say it would go this

19   route.  She didn't give a clue.  I mean, I just say if they

20   want to go constitutional avoidance, I'm not sure, other

21   than from your point of view, in whose interest is your

22   suggestion?  I understand what motivates you but I don't

23   see how it motivates the Court of Appeals to take it or it

24   particularly motivates me or defendant's position.

25           MR. GUSTAFSON:  This is a purely legal question.

1   I think it is in the national interest that it be resolved

2   since at some point in the future our case will go up

3   before the D.C. Circuit presumably.

4           THE COURT:  Depends on what they do with the

5   Cavanaugh's opinion I supposed.  If they decide that's the

6   proper remedy, one could argue that your remedy might not

7   be proper.

8           MR. GUSTAFSON:  I'm sure my opposing counsel will

9   make that argument.  Our view of course will be that,

10  because there are multiple issues on which a holding of

11  unconstitutional could be --

12          THE COURT:  I'm not sure that multiple issues is

13  the same thing as frosting on the cake.

14          Let's hear from the other side.

15          MR. GUSTAFSON:  Thank you, Your Honor.

16          THE COURT:  Reading this in the footnotes, you do

17  have the impression that they have given some consideration

18  to that particular argument that the plaintiffs make now

19  about the independent difficulties raised by the financing.

20          MR. GUSTAFSON:  Your Honor, I'm happy to address

21  that if you like.

22          THE COURT:  I'll give you a minute in a moment.

23  The exemption from the ordinary appropriations process is

24  at most just, quote, "extra icing on" end of quote, an

25  unconstitutional cake already frosted.  Seems like an

1    interesting quote.  Go ahead, sir.

2            You are Mr. Berns?

3            MR. BERNS:  Yes, Your Honor.

4            I think that every aspect of plaintiff's proposal

5    is unusual.  They ask this Court to certify for

6    interlocutory appeal a question that a panel of the D.C.

7    Circuit has already decided in their favor that is

8    extraordinary, if not unprecedented.  And to top it off,

9    they would ask the en banc D.C. Circuit to consolidate

10   their case with another case already before the full D.C.

11   Circuit for initial en banc review.

12           There is no good reason for this Court or the

13   D.C. Circuit to proceed in that extraordinary fashion.  If

14   the D.C. Circuit wants to decide the merits of the

15   constitutional question in PHH, it can do that in PHH with

16   or without an interlocutory appeal from the plaintiffs in

17   this case.

18           If the D.C. Circuit decides that it does not want

19   to decide the merits of the constitutional question in PHH,

20   I think that the Court recognized that it would not be

21   doing the D.C. Circuit any favors by certifying an

22   interlocutory appeal here.

23           It is curious, plaintiffs are asking the Court to

24   certify an interlocutory appeal under 1292(b) but did not

25   reference at all during the course of their argument or in

their briefs the standard that governs certification of

interlocutory appeals.  I don't think that they have made

the showing that they need to make in order to justify the

extraordinary approach that they ask the Court to take

here.

THE COURT:  The standard is whether or not there

is a controlling question of law as to which there is

substantial ground for difference of opinion.  And I'll ask

plaintiff's counsel in a minute, what does that mean in

terms of the remedy that you are asking me to rule on.  You

are asking me to rule on two things.

And the second is the immediate appeal from the

order may materially advance the ultimate determination of

the litigation.  What do you say about that?  It has to be

an "and" too.

MR. BERNS:  It is an "and," yes.  I think the

Court is correct that one can hypothesize a situation in

which the constitutional issue is resolved earlier by the

Court of Appeals if this case is certified for

interlocutory appeal.  But that is quite speculative.

Plaintiffs think that it is likely that the full Court of

Appeals will pursue Judge Henderson's approach in PHH.  I

don't know what the basis for that assertion is.  I think

that although the statute uses the word "may" it does

require something more than the speculation that plaintiffs

1    have offered.

2            I will defer the Court to an unpublished D.C.

3    Circuit  decision Vogel versus United States Office

4    Products.  That's 2000 Westlaw 1683498 from 2000 where the

5    Court refused to permit an interlocutory appeal when a

6    separate appeal pending in another court could render moot

7    a decision by the D.C. Circuit.

8            THE COURT:  When they refer to another Court are

9    they talking about another circuit?

10           MR. BERNS:  There was a separate appeal in the

11   Sixth Circuit that D.C. Circuit said could not moot the

12   appeal in the D.C. Circuit in that case.  The situation

13   here is different but we do have a case already before the

14   D.C. Circuit which at least could make it unnecessary for

15   the D.C. Circuit to resolve the question that the

16   plaintiffs would have the Court certify in this case.

17           THE COURT:  So if they granted en banc

18   consideration, what is the affect of Judge Cavanaugh's

19   opinion at that point?

20           MR. BERNS:  I think it would depend on whether

21   the order granting en banc rehearing vacates the panel

22   decision or not.

23           THE COURT:  They don't have to.  They could just

24   vacate the judgment.

25           MR. BERNS:  I think that's correct.

1          THE COURT:  But does that mean that his opinion

2     has, is not binding until they resolve the issue I assume.

3          MR. BERNS:  I believe that that's correct, Your

4     Honor.  I wouldn't encourage you to enter a decision that

5     conflicts with his decision until the D.C. Circuit has

6     suggested that that approach would be appropriate.  But--

7          THE COURT:  What do you mean by the last phrase

8     there, until they suggest that that approach would be

9     appropriate?

10          MR. BERNS:  I think we're waiting to see what the

11     full D.C. Circuit does with the panel decision.  And,

12     although the CFPB obviously thinks the panel decision is

13     wrong and its holding on the merits, I would not advocate

14     before you to reach a different conclusion if the Court

15     were to enter a partial judgment as plaintiffs have asked.

16          THE COURT:  A different conclusion from?

17          MR. BERNS:  From Judge Cavanaugh's decision.

18          THE COURT:  Why?  If it is not binding.

19          MR. BERNS:  I think that we're waiting for a

20     decision from the full D.C. Circuit.  But until the full

21     D.C. Circuit acts, I think that it would be premature to do

22     something different than what he did.

23          THE COURT:  Okay.  Which was what at the end of

24     the day in our phone call back in October we had decided to

25     do, wait to see whether you move for en banc and see what

1    happens after that.

2            Anything else?

3            MR. BERNS:  That's it, Your Honor.

4            THE COURT:  Okay, thank you.

5            Yes.

6            MR. GUSTAFSON:  I'll just go through Mr. Berns'

7    points.  He points out that your decision if you granted

8    our request would be in our favor, that is true but the

9    remedy would be against our position.

10           It is black letter law that a party may appeal a

11   case even when he is the prevailing party if he disagrees

12   with the remedy.  Mr. Berns points out that consolidation

13   is unusual.  This is an unusual case.  It is unusual that

14   Court of Appeals sitting en banc would be deciding between

15   affirming or rejecting a constitutional holding or avoiding

16   that holding on constitutional avoidance grounds.  Granted,

17   it is unusual.  But the Court consolidates matters,

18   including matters for initial hearing en banc directly from

19   the judicial body below.  I'm thinking of--

20           THE COURT:  But in this case, you would be sort

21   of jumping over the District Court and a panel to go right

22   to a full en banc.  What is the rush?

23           MR. GUSTAFSON:  To the extent that jump has been

24   made, Judge Cavanaugh made the jump himself.  That cat is

25   already out of the bag.  And the constitutional question

1    has now been fully vetted by one panel of the D.C. Circuit.

2            THE COURT:  Wouldn't it be, your argument would

3    be enhanced if the fact was that your scenario, whether

4    they're likely or not likely, would end in the termination

5    of the case.  But that, they don't have to reach your

6    remedy question, even if this reach the constitutional

7    question, they don't have to reach the remedy question.

8    They could just decide that Cavanaugh was right or wrong,

9    and not have to decide remedy.  But second of all, there

10   are still these issues that linger here no matter what.  So

11   it comes back to me.

12           MR. GUSTAFSON:  I would say not no matter what

13   because under some scenarios, our cases fully resolved

14   without having to address the appropriations clause

15   argument.  For example, the Court of Appeals or the Supreme

16   Court were to decide that Judge Cavanaugh was right about

17   the constitutional merits but wrong about the remedy, then

18   our case could go away.

19           THE COURT:  To say that he is wrong about the

20   remedy doesn't mean necessarily that an appellate en banc

21   is going to say: By the way, here is the right remedy.

22   They don't have to.

23           MR. GUSTAFSON:  You are right, they don't to.

24   But the standard is that the request will materially

25   advance the ultimate termination of the litigation.

1          THE COURT:  What about the substantial grounds

2     for difference of the opinions?  You are the only one that

3     disagrees with his remedy.  I don't know anybody else who

4     does.

5          MR. GUSTAFSON:  I'm glad you raised that.  I

6     think that we actually have a strong basis for arguing for

7     a broad remedy, even on the removal issue itself.  In the

8     Supreme Court subsequent to the Free Enterprise Fund case,

9     this is Executive Benefits Insurance Agency v. Arkison, 134

10    Supreme Court 2165 at page 2173.

11          The Supreme Court pointed out that, when deciding

12    whether to sever an unconstitutional clause from the

13    statute, the Court considers -- will sever the

14    unconstitutional clause unless it is evident -- this is a

15    quote: --evident from the statutory text and context that

16    Congress would have preferred no statute at all.

17          So the question is one of congressional intent.

18          THE COURT:  You are disagreeing with Judge

19    Cavanaugh.  But for purposes of where most of us stand at

20    the moment, at this level, we would agree with Judge

21    Cavanaugh until something happens to that opinion.

22          MR. GUSTAFSON:  You raised the question about

23    whether there is a reasonable basis for disagreement of

24    opinion.  I think this intervening Supreme Court authority

25    raises a strong argument that they prevail or not, but

1    that --

2         THE COURT:  Did he not consider that when he came

3    up with his remedy?  I thought that he went through that

4    analysis up to a point.

5         MR. GUSTAFSON:  Whatever that, in PHH--

6         THE COURT:  What the date of the opinion that you

7    just read from?

8         MR. GUSTAFSON:  That's a 2014 opinion.

9         THE COURT:  He was well aware I'm sure.

10        MR. GUSTAFSON:  Recall that in PHH, the question

11   was whether particular enforcement action by the agency

12   should be allowed to stand.  PHH's interest was in getting

13   out from under the CFPB enforcement action, not in

14   invalidating the statute or winning a broad constitutional

15   remedy.  So our interests in that respect are not aligned.

16   We think we would be making this remedy argument in a

17   judicial environment that the Supreme Court has indicated

18   is open to considering Congress' intent.

19        In this case, Congress specifically intended in

20   the text of the statute that the CFPB be, and quote, an

21   independent bureau within the Federal Reserve System.

22   That's section 5491(a).  It designated the CFPB elsewhere

23   as an independent regulatory agency.  It expressly said

24   that the Federal Reserve does not have the authority to

25   remove the director.  So, all of these are textual

1   indicators of Congress' intent that the CFPB be independent

2   from the Executive Branch.

3          Those features were not present in the Free

4   Enterprise Fund v. PCAOB case.  In that case, Congress

5   didn't even believe that PCAOB was a federal agency,  that

6   the statute expressly declares that the CFPB is not a

7   federal agency.

8          THE COURT:  I must say that, he is pretty

9   expansive in section three of the PHH Corporation opinion

10  which would be at 839 F3d. page 37 and thereafter.  He goes

11  through the very analysis that you are disagreeing with, as

12  far as I can see.  So once upon a time when I called up to

13  counsel I thought we were going to have this case go up or

14  down with the other one.  I couldn't understand why this

15  case had to remain out there.

16         Counsel for plaintiffs did a fine job explaining

17  to go me that the issues did not necessarily coincide and,

18  as you've just said, they're not all aligned.  So I do

19  think that we won't materially advance.  There is a large

20  number of 'if's before we could even materially advance the

21  constitutional issue.  I have to certify.  They have to

22  grant.  They have to decide the issue.  They have to take

23  on the constitution issue, which they do not have to.  And

24  they have to grant the petition en banc in this case

25  independently, which will be somewhat far behind their

1  other case.

2        I am persuaded, as I was before, that we should

3  wait to see what they will do.  And my case will be

4  materially advanced by whatever they decide perhaps.  But

5  if not, it won't be materially advanced one way or another.

6  If I get no instruction from them, I'm where I am at the

7  moment.  If they deny en banc, then I know what I have to

8  do, and you will argue just what you argued about remedy.

9  And you will have an uphill battle given Judge Cavanaugh's

10  analysis.

11        But in any case, to me this does not meet the

12  standard.  There are two and there is an "and."  I don't

13  see that there is a big debate on remedy in the Court of

14  Appeals certainly.  I cannot believe since you filed an

15  amicus that you did not argue the remedy question at the

16  Court of Appeals, even as a amicus.  And it certainly did

17  not grab the attention of the panel in the Cavanaugh

18  opinion.  And second of all, the notion that this will

19  materially advance this case is very speculative and since

20  there are remaining issues, it won't get rid of it.

21        MR. GUSTAFSON:  I understand, Your Honor.  In

22  light of your assessment of the speculative nature of the

23  case at this juncture I would only request that we do wait

24  to see what happens in the Court of Appeals.  And if the

25  Court of Appeals does grant rehearing en banc, then I think

1   Your Honor is precisely correct that the Court has three

2   options.  And under the first of those options, the easiest

3   of those options, we're going to see a great deal of delay

4   before the constitutional issue is resolved again.  So my

5   request is that we be permitted to again raise the

6   possibility of certifying our issue for appeal when and if

7   the Court of Appeals grants rehearing en banc.

8           THE COURT:  I won't stop you.  You persuaded me

9   way back when by phone call.  There are too many other

10  issues lurking there.  So I don't see that I can conclude

11  that you've met the standard.  But obviously you have every

12  right to move again.

13          MR. GUSTAFSON:  Thank you, Judge Huvelle.

14          THE COURT:  Thank you, counsel, the motion is

15  denied.  No more letter writing.

16          Unopposed motion for status conference.  That was

17  granted.

18          Thank you.  Have a good day.

19                  (Whereupon, at 3:30 p.m., the hearing

20  concluded.)

21

22

23

24

25

CERTIFICATE OF REPORTER

I, Lisa Walker Griffith, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


_____        _____
Lisa Walker Griffith, RPR                                    Date